UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SILENTSEAS S.A., Plaintiff, - against - WILLIAM M. PINZLER, Defendant. | 24-CV-2401 (VSB) (JW) **OPINION & ORDER** |

Appearances:

Stephen Wagner
Cohen Tauber Spievack & Wagner, P.C.
New York, NY
*Counsel for Plaintiff*

William M. Pinzler
New York, NY
*Pro se Defendant*

VERNON S. BRODERICK, United States District Judge:

Plaintiff SilentSeas S.A. ("Plaintiff" or "SilentSeas") brings this action for a breach of contract against Defendant William M. Pinzler ("Defendant" or "Pinzler"), an attorney appearing pro se in this action. Before me is Plaintiff's motion for summary judgment. Because there is no genuine dispute as to any material fact that Defendant, as escrow agent, breached the contract at issue and failed to release the escrow funds due and owed to Plaintiff, Plaintiff's motion is GRANTED.

## I. **Factual Background**[1]

Plaintiff SilentSeas is an investment manager based in Athens, Greece. (Doc. 17 ("Mamakos Decl.") ¶ 1–2.) In early 2023, SilentSeas sought financing from Morgan Black Securities ("MBS") in connection with a real estate development project (the "Project"). (*Id.* ¶¶ 3–4.) On February 22, 2023, SilentSeas and MBS signed a letter of intent (the "Existing Letter of Intent") for MBS to provide financing for the Project. (*Id.* ¶ 4.) SilentSeas, MBS, and Defendant Pinzler—who served as counsel to MBS—also entered into an escrow agreement (the "Existing Escrow Agreement"). (*Id.*) Under the Existing Escrow Agreement, Pinzler was appointed as escrow agent, and SilentSeas was required to deposit certain "Upfront Fees" to Pinzler's escrow account. (*Id.*)

On May 17, 2023, the Existing Letter of Intent and Existing Escrow Agreement were each amended and restated. (Mamakos Decl. ¶ 5.) The amended Letter of Intent ("Amended LOI") stated that MBS would loan €860,000,000 (the "Loan") to SilentSeas, and required SilentSeas to deposit certain "Upfront Fees" in Pinzler's escrow account. (*Id.* ¶¶ 4–5; Doc. 18-4 ("Am. LOI").) These Upfront Fees included engagement fees, credit insurance fees, and legal fees that were to be held in the escrow account until MBS financed the Loan. (Mamakos Decl. ¶

---

[1] The facts are undisputed unless otherwise noted. I recite the facts in the light most favorable to Defendant because he is the opponent of the summary-judgment motion. *See, e.g.*, *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). Defendant failed to comply with Local Civil Rule 56.1(b), which required him to oppose the motion with a counterstatement of facts, with "a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material fact." "Ordinarily, a failure to respond to facts set forth in the movant's Rule 56.1 statement results in those facts being deemed admitted." *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Therefore, because the facts alleged in Plaintiff's 56.1 statement are sufficient to establish breach of contract, on this basis alone I could grant Plaintiff's summary judgment motion. However, I have "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 279 (2024). I exercise my discretion now in excusing Defendant's noncompliance and will accordingly consider Defendant's opposition.

4.) In three installments from February through May 2023, SilentSeas—through its sole shareholder Nicholas Mamakos—transferred a total of $899,576 to Defendant's escrow account (the "Escrow Funds"). (*Id.* ¶¶ 7, 9.) Under the amended Escrow Agreement ("Amended Escrow Agreement"), Pinzler, as escrow agent, MBS, and SilentSeas "concurrently enter[ed] into" the Amended LOI. (Doc. 18-5 ("Am. Escrow Agr.") at 1.)

The Amended LOI provided that the Upfront Fees were "fully refundable and shall be repaid in accordance with the Escrow Agreement in the event [MBS] fail[s] to provide the Loan under the specified terms and conditions." (Am. LOI at 5.) The Loan Agreement, which was attached to the Amended LOI as Exhibit A, provided for the "Return of the Upfront Fees," upon certain conditions, including "if the Principal Loan Amount of Euro Eight Hundred and Six Million . . . is not fully disbursed to Borrower's nominated bank account by August, 2023 . . ." (*Id.* at 9.) The Loan Agreement explicitly states that "all amounts in the escrow account listed in the Escrow Agreement and Joint Escrow Instructions, dated as of May 17th, 2023 by and among the Parties and William M. Pinzler, as escrow agent, will be paid electronically to Borrowers nominated bank account within 2 business days of such Lender Default." (*Id.*) The failure to disburse the loan amount constituted a "Lender Default" under the relevant agreements. (*Id.*)

The Amended Escrow Agreement permitted SilentSeas to request the release of the Escrow Funds if the Loan was "canceled . . . [or] otherwise delayed for a period of 5 months from the date of execution of the Existing Letter of Intent." (Am. Escrow Agr. ¶ G.) Under the Escrow Agreement, Pinzler, as escrow agent, "will receive funds and disburse them in accordance with a written instruction from [SilentSeas] and other third parties as directed by [SilentSeas]." (*Id.* ¶ E.) The Escrow Agreement provided that Pinzler, as escrow agent, "shall, within 5 Banking Days following receipt of a written instruction in substantially the form of

Exhibit B attached hereto, signed by the [SilentSeas] signatory, directing the release of the Escrow Funds to [SilentSeas] or MBS (as applicable), release the Escrow Funds to the account or accounts designated therein." (*Id.* ¶ G.) Mamakos was designated as SilentSeas' signatory. (*Id.* ¶ C.)

The Loan financing never occurred. (Mamakos Decl. ¶ 16.) Based on the terms of the Amended LOI (which included the Loan Agreement) and the Amended Escrow Agreement, SilentSeas could request the return of the Escrow Funds beginning on July 22, 2023, which was five months after the date of the Existing Letter of Intent. (*Id.*) However, SilentSeas did not immediately demand return of the funds based on MBS' assurances that the Loan would imminently close. (*Id.* ¶¶ 16–17.) Months passed, and on December 18, 2023, Mamakos, as SilentSeas' signatory, emailed Pinzler with instructions to release the Escrow Funds to a designated bank account. (Mamakos Decl. Ex. 7.) Although more than five banking days had passed, the Escrow Funds still were not released. (*Id.* ¶ 19.) Mamakos emailed Pinzler on December 28, 2023 requesting "evidence of wire initiation" as well as an explanation as to why the funds were not released. (*Id.*) That same day, Pinzler replied citing "complications," and that the Escrow Funds would be reduced by certain amounts based on the "great deal of work" undertaken by other parties. (*Id.*) Mamakos demanded that the Escrow Funds be returned under the terms of the Amended LOI (including the Loan Agreement) and the Amended Escrow Agreement. (*Id.* ¶ 20.)

Over the next several months, Pinzler made a myriad of representations that either the Escrow Funds would be imminently released or gave purported reasons why they were not released. The following are some of those representations:

- <u>January 3, 2024</u>: Pinzler states: "You will have the funds no later than the end of next week." (Mamakos Decl. ¶ 21.)

- January 22, 2024: In response to SilentSeas' demand letter, Pinzler replied that he was "dealing with a family emergency." (*Id.* ¶ 23.)
- January 25, 2024: In response to SilentSeas' re-sending of the demand letter, Pinzler states that he will return to New York and go to the bank the next day to initiate the transfer. (*Id.* ¶ 25.) Later that day, Pinzler states that he "could not get out tonight. another crisis," would "definitely be back over the weekend," and will initiate the transfer "first thing Monday morning." (*Id.* ¶ 26.)
- January 26, 2024: Pinzler explains that the delay was because he had to rush his brother, who had a stroke, to the emergency room. (*Id.* ¶ 27.)
- January 29, 2024: Pinzler explains that he "tested positive for COVID" and could not return to New York until later that week, and that he would send a wire that Friday, which was February 2, 2024. (*Id.* ¶ 28.)
- February 3, 2024: Pinzler explains that he "[w]oke up yesterday with 101 fever" and that he "want[ed] to get this resolved as soon as possible." (*Id.* ¶ 29.)
- February 7, 2024: Pinzler explains that he had not yet returned to this office and will "advise" after he sends the wire to Mamakos. (*Id.* ¶ 30.)
- February 14, 2024: Pinzler claims that he was ill, but that he would transfer at least $400,000 to SilentSeas on February 17, 2024 and provide proof of transfer. (Doc. 18 ("Wagner Decl.") ¶ 13 (describing call between Pinzler and SilentSeas' counsel).) SilentSeas states that it would initiate litigation the following week if the Escrow Funds were not returned by then. (*Id.*) Pinzler asks which provision of the Escrow Agreement requires him to disburse the Escrow Funds solely based on SilentSeas' written instructions. (*Id.*) SilentSeas identifies Paragraph E of the Amended Escrow Agreement to Pinzler. (*Id.* ¶ 14) Pinzler also states that he is "prepared to send Nick [Mamakos] the nearly $900,000 he requests" but that it is "[s]ubject to [MBS'] agreement, which [he] should have today or tomorrow." (*Id.* ¶ 15.)
- February 19, 2024: SilentSeas asked Pinzler to confirm that the wire was sent, but Pinzler states that he could not get to the bank because his "fever spiked," and that the transfer would take place "tomorrow." (*Id.* ¶ 17.)

- February 20, 2024: In response to SilentSeas' email requesting confirmation of transfer, Pinzler replied that he was "at the pulmonologist for further tests."
- February 21, 2024: In response to SilentSeas' email regarding the transfer, Pinzler stated that "he was due back at Mt. Sinai" hospital. (*Id.* ¶ 19.) SilentSeas stated that it would initiate litigation if the transfer was not received within one week. (*Id.*)
- February 29, 2024: Pinzler requested more time because his "health remains precarious." (*Id.* ¶ 20.) SilentSeas agreed to give Pinzler more time, until March 4, 2024, to release the Escrow Funds. (*Id.*)
- March 3, 2024: Pinzler requested more time because he had a pulmonologist appointment "to determine if supplemental oxygen will help [him] get around." (*Id.* ¶ 21) Pinzler also stated that his office manager was a signatory on the Escrow Account, but had been out of town because of his mother's sickness, death, and estate management. (*Id.*) Pinzler promised that his office manager "will transfer" the Escrow Funds "either Tuesday afternoon or Wednesday morning." (*Id.*) SilentSeas agreed to give more time until March 6, 2024. (*Id.* ¶ 22.)
- March 6, 2024: In response to SilentSeas' request for a status update, Pinzler states that his office manager "did not come into the office today" and requested one more day. (*Id.*)
- March 7, 2024: In response to SilentSeas' email, Pinzler states that his "doctor had asked him to hold off for the morning." (*Id.*) Pinzler also explained that his office manager could not wire the funds because "he came back from Indiana with a fever." (*Id.* ¶ 23.)
- March 8, 2024: In response to SilentSeas' email, Pinzler states that he would go to the bank in the afternoon and that he could not previously go because he was "[o]n a Zoom call." (*Id.* ¶ 24.) SilentSeas informed Pinzler that if the Escrow Funds were not released in an hour, a lawsuit would be filed. Pinzler replied that he can be served electronically and that he would "not challenge service." (*Id.* ¶ 25.)

As of November 25, 2024, the Escrow Funds have not been released from Pinzler to SilentSeas. (Mamakos Decl. ¶ 33.)

On March 24, 2026, Defendant was disbarred from the practice of law and the Attorney Grievance Committee for the New York Appellate Division, First Department directed Defendant to make restitution payments to SilentSeas in the amount of $899,576.00 based on his intentional conversion and/or misappropriation of these third-party funds. (Doc. 25-1 at 2, 5.)[2] In connection with the disciplinary proceeding, Defendant submitted an "affidavit of resignation" in which he "acknowledge[d]" that the disciplinary charges against him included "the misappropriation of funds" and also "that he cannot successfully defend against the allegations." (Doc. 25-1 at 2.)

## II. <u>Procedural History</u>[3]

On March 29, 2024, Plaintiff filed a complaint. (Doc. 1.) Based on Plaintiff's affidavits of service, Defendant's answer was due April 24, 2024. (Docs. 6, 7.) On April 26, 2024, Pinzler filed an answer. (Doc. 8.) On May 14, 2024, I entered a case management plan and scheduling order. (Doc. 11.)

On November 25, 2024, Plaintiff moved for summary judgment. (Doc. 14.) Plaintiff also filed a supporting memorandum of law, (Doc. 15 ("Mem.")), a declaration from Nicholas

---

[2] The facts in the decision of Defendant's disciplinary proceeding are not referenced in Plaintiff's 56.1 statement, because it was rendered after the filing of Plaintiff's summary judgment papers. Defendant did not dispute the facts contained in the decision. "These facts have been included here, because the Court may rely on any admissible 'evidence in the record' on a motion for summary judgment." *Edwards v. Noem*, No. 23-CV-6942, 2026 WL 861558, at *1 n.1 (S.D.N.Y. Mar. 30, 2026) (quoting *In re Fosamax Prods. Liab. Litig*., 707 F.3d 189, 193 (2d Cir. 2013)); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 2721 (4th ed. 2026) ("[A]lthough the court is required only to consider the materials cited by the parties, it has discretion to consider other materials in the record when making its determination."). Indeed, Rule 56 expressly authorizes the court to consider materials in the record other than those cited by the parties in resolving summary judgment. Fed. R. Civ. P. 56(c)(3).

[3] I note only the procedural history relevant to the instant motion for summary judgment.

Mamakos, (Doc. 17 ("Mamakos Decl.")), and a declaration from Stephen Wagner, (Doc. 18 ("Wagner Decl.")). On December 16, 2024, Pinzler filed an affirmation in opposition to the motion for summary judgment. (Doc. 19 ("Opp'n").)

On July 10, 2025, because Defendant appears pro se in this action, I ordered (1) Plaintiff to file a notice to pro se Defendant in compliance with Local Civil Rule 56.2 ("Rule 56.2 Notice"), (2) Defendant to file a new opposition in compliance with Local Civil Rule 56.1 by August 8, 2025, and (3) Plaintiff to file a reply, if any, by August 15, 2025. (Doc. 20.) On July 18, 2025, Plaintiff filed the Rule 56.2 Notice. (Doc. 21.) To date, Defendant has not filed a document in compliance with Local Civil Rule 56.1, and has not made any other filings since his affirmation in opposition filed on December 16, 2024. Plaintiff did not file a reply.

On April 7, 2026, Plaintiff submitted a March 24, 2026 decision from the New York Appellate Division, First Department for me to consider in connection with its summary judgment motion, which indicated that Pinzler had been disbarred and his name stricken from the roll of attorneys, effective January 5, 2026. (Doc. 25-1 at 4.) Moreover, the First Department's Attorney Grievance Committee also directed Defendant "to make restitution to Silent Seas, S.A. in the amount of $899,576.00, plus interest, to the extent that said sum was not paid prior to entry of this order." (*Id.* at 5.)

## III. <u>Legal Standard</u>

To prevail on a motion for summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions . . . or declarations," or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Cifra* at 216 (collecting cases). "Once the moving party has carried its burden" of citing portions of the record evincing no genuine dispute as to any material fact, "the nonmoving party 'must come forward with specific facts showing there is a genuine issue for trial,' bearing in mind that 'the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient.'" *Barr v. City of New York*, No. 16-CV-5266, 2018 WL 3407705, at *3 (S.D.N.Y. July 2, 2018) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Further, "self-serving affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." *Williams v. New York City Health & Hosps. Corp.*, No. 11-CV-9456, 2012 WL 5506128, at *4 (S.D.N.Y. Nov. 13, 2012) (citing *BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn.,* 77 F.3d 603, 615 (2d Cir. 1996)). However, viewing the evidence in the light most favorable to the non-moving party means that I may not "weigh the evidence" and must "eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).

Ordinarily, a failure to respond to facts set forth in the movant's Rule 56.1 statement results in those facts being deemed admitted. *Giannullo*, 322 F.3d at 140. As the Second Circuit has emphasized, however, pro se litigants are entitled to "special solicitude . . . when confronted

with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). When confronted with a pro se litigant's failure to respond to a movant's Rule 56.1 statement, I may "determine if there are any other material issues of fact based on the evidence in the record." *Pagan*, 2013 WL 5425587, at *2.

## IV. Discussion

SilentSeas alleges breach of contract because Pinzler, as escrow agent, failed to release the Escrow Funds to SilentSeas.[4] "A breach of contract claim under New York law has four elements: '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Up State Tower Co., LLC v. Town of Cheektowaga*, No. 24-165-CV, 2025 WL 444207, at *1 (2d Cir. Feb. 10, 2025) (summary order) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).[5]

As an initial matter, Pinzler does not dispute that a contract exists between the parties. The Amended Escrow Agreement, which states that it was "concurrently enter[ed] into" with the Amended LOI, is an agreement among Pinzler, as escrow agent, MBS, and SilentSeas. (Am. Escrow Agr. at 1.) Pinzler also does not dispute that he entered into the Amended Escrow Agreement with SilentSeas, or that he had certain obligations as an escrow agent under that agreement. Nor does Pinzler's affirmation dispute the elements for breach of contract, dispute that he entered into the Amended Escrow Agreement, or repudiate the fact that he had certain obligations under the agreement. (*See* Opp'n.) Pinzler also does not dispute SilentSeas'

---

[4] SilentSeas also indicates that Pinzler likely breached the relevant contract because, based on Pinzler's representations, he likely disbursed the funds to his client MBS. I need not decide this issue to resolve the instant motion; therefore, I do not opine on whether Pinzler released the funds to MBS.

[5] The parties do not dispute that New York law applies based on the Escrow Agreement's governing-law provision. (Am. Escrow Agr. ¶ O ("This Agreement shall be governed by and construed in accordance with the laws of New York applicable to contracts made and to be performed entirely within such state.").)

performance. In short, Pinzler does not dispute that SilentSeas has established each of these elements.

Pinzler acknowledges that Plaintiff has made a deposit, now demands a return of that deposit, and is "suing [him] for a return of its deposit." (Opp'n ¶ 5.) SilentSeas has demonstrated that it wired $899,576.00—in three separate installments on February 23, March 2, and May 18, 2023—to Pinzler's Escrow Account. (Mamakos Decl. ¶ 9.) Pinzler does not dispute those wire transfers, and does not otherwise dispute SilentSeas' performance under the Amended Escrow Agreement.

Nor does Pinzler dispute damages or otherwise argue that Plaintiff is not entitled to any damages. In fact, Pinzler expresses his intention to "reach a resolution with Plaintiff and conclude this matter as promptly as possible," by paying Plaintiff "the principal owed, interest accrued and a contribution to the legal fees expended in this matter," which seems to be an admission that SilentSeas is owed monetary compensation. (Opp'n ¶ 10.)

Finally, Pinzler does not dispute his failure to perform under the Escrow Agreement. Pinzler does not claim that he ever released the Escrow Funds, either in part or in whole, to Plaintiff. Pinzler's primary argument is that MBS' financing project is complex and requires securities to be borrowed from different financial institutions in different countries. (Opp'n ¶¶ 2–4.) However, the complexity of the underlying financing transaction has little to do with the terms of the Amended Escrow Agreement, which clearly states: "The Escrow Agent shall, within 5 Banking Days following receipt of a written instruction . . . directing the release of the Escrow Funds to [SilentSeas] . . . release the Escrow Funds to the account or accounts designated therein." (Am. Escrow Agr. ¶ G.) The Amended Escrow Agreement also grants SilentSeas "the right to request the release of the Escrow Funds to [SilentSeas] if . . . the Loan is canceled for

any other reason or otherwise delayed for a period of 5 months from the date of execution of the Existing Letter of Intent." (*Id.*) Pinzler does not dispute that the Loan was never funded, that SilentSeas made a valid request for a release of the Escrow Funds, or that he never returned the Escrow Funds to SilentSeas.

Pinzler tries to explain the reason for the delay, claiming that there is a "very complex and time consuming" process for transferring funds from Panama—where MBS is based—to the United States. (Opp'n ¶¶ 7–10.) However, the process of transferring funds from MBS' Panama bank account is irrelevant. The Escrow Funds are—or should be—in Pinzler's escrow account at Bank of America. Pinzler offers no explanation for his delay in releasing the funds in his escrow account to Plaintiff.

Pinzler does not deny the myriad reasons he gave to SilentSeas from January through March 2024 explaining the delay. Nor can he, as SilentSeas attached copies of that correspondence. (*See, e.g.*, Doc. 18-7–18-20.) SilentSeas' undisputed recitation of the various correspondence range from rudimentary dog-ate-my-homework type of explanations to serious and grave claims of illness and even death.[6]

Moreover, the Attorney Grievance Committee of the New York Appellate Division, First Department's decision further bolsters SilentSeas claims. On March 24, 2026, the First Department directed Pinzler to make restitution payments to SilentSeas in the amount of $899,576.00 "based on deposition testimony and bank records evidencing that he intentionally

[6] Based on the correspondence, I have serious concerns about Pinzler's truthfulness concerning the reasons for his delay. Indeed, it is not clear that Pinzler's representations made in connection with the summary judgment motion are truthful. Pinzler's affirmation in opposition to the motion for summary judgment, filed on December 16, 2024, stated that he will be given proof that the Panama bank renewed its license in Panama, which would be "provid[ed] tomorrow morning." (Opp'n ¶ 9.) Nearly two years have passed, but Pinzler has not made any indication that he has taken any new steps to return the Escrow Funds. However, I need not engage in a fact-finding inquiry into Pinzler's health (or that of his brother or office manager's mother), motives, or actions because he does not dispute that he failed to perform under the Amended Escrow Agreement.

converted and/or misappropriated approximately $899,576 in third-party funds." (Doc. 25-1 at 2, 5.) Thus, even viewing the record in the light most favorable to Pinzler, I find no genuine dispute—or even any dispute at all—of any material fact that Pinzler breached the express terms of the Amended Escrow Agreement. As a matter of law, Pinzler is liable under the breach-of-contract claim.

## V. <u>Conclusion</u>

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED. Within 30 days of this Opinion & Order, Plaintiff shall submit a proposed judgment for damages. Defendant has 14 days thereafter to respond.

Absent extraordinary circumstances, no extension requests shall be granted. Defendant Pinzler is warned that any requests for extensions must be substantiated by affidavits or other supporting documentation. Pinzler is also warned that failure to make good-faith efforts (such as the release of the Escrow Funds to SilentSeas) to comply with this Opinion & Order or any other court orders, may result in sanctions.

The Clerk of Court is respectfully directed to terminate Document 14.

SO ORDERED.

Dated: October 27, 2026
New York, New York



Vernon S. Broderick
United States District Judge